825 F.2d 408
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John S. NEAL; Constance T. Wynn; Mary E. Tucker; Marjorie M.
Greenhill; Alfred V. Tucker; Isabel P. Neal; Alice
Tucker, Plaintiffs-Appellees,
v.
James HARRIS, as Mayor of Blackstone, Virginia; J.A. Wilson,
Jr.; James Simpson; E.T. Clay; W.E. Hawkes; John W. Hill,
Jr.; P.B. Ellington, Jr.; R.A. Pennington, as members of
Town of Blackstone, Defendants-Appellants,
and
Forest Ragland; A. Taylor Jenkins; Eloise H. Powell; Conway
B. Moncure, individually and as members of Electoral Board
of Nottoway County, Virginia; Wanda S. Engle, individually
and as a Registrar Voters of Nottoway County, Virginia, Defendants.
John S. NEAL; Constance T. Wynn; Mary E. Tucker; Marjorie M.
Greenhill; Alfred V. Tucker; Isabel P. Neal; Alice
Tucker, Plaintiffs-Appellees,
v.
James HARRIS, as Mayor of Blackstone, Virginia; J.A. Wilson,
Jr.; James Simpson; E.T. Clay; W.E. Hawkes; John W. Hill,
Jr.; P.B. Ellington, Jr.; R.A. Pennington, as members of
Town of Blackstone, Defendants-Appellants,
and
Forest Regland; A. Taylor Jenkins; Eloise H. Powell; Conway
B. Moncure, individually and as members of Electoral Board
of Nottoway County, Virginia; Wanda S. Engle, individually
and as a Registrar Voters of Nottoway County, Virginia, Defendants.
 Nos. 86-1734, 86-1541
 United States Court of Appeals, Fourth Circuit.
 Argued May 6, 1987.
Decided July 28, 1987.
 
 Kennen C. Walden, Jr. (Connie Louise Edward; Walden & Walden, P.C., on brief), for appellant.
 Gerald Thomas Zerkin (Zerkin, Heard & Kozak; Richard D. Taylor; Hill, Tucker & Marsh; Laughlin McDonald; Neil Bradley; American Civil Liberties Union, on brief), for appellees.
 Before PHILLIPS, ERVIN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal challenges the authority of the district court to order a special election implementing the terms of a consent decree creating a new electoral system in the Town of Blackstone, Virginia. Because we find that the consent decree committed the matter of a special election to the discretion of the district court, we affirm.
 
 
 2
 * Plaintiffs, black citizens of the Town of Blackstone, Virginia, brought this action against Blackstone's mayor and town council on September 20, 1985, alleging that the at-large electoral system by which defendants were elected violated Sec. 2 of the Voting Rights Act, 42 U.S.C. Sec. 1973, and the first, fourteenth, and fifteenth amendments to the Constitution. On February 27, 1986, before any discovery had been taken, the parties entered a consent decree which provided that '[w]ithout the defendants admitting any liability or the validity of any of plaintiffs' legal claims, the parties have agreed that a combined ward/at-large plan for Town Council elections in the Town of Blackstone, Virginia should be implemented.' By the decree, the parties agreed to allow Dr. Timothy O'Rourke of the Institute of Government at the University of Virginia to submit several alternative combined ward/at-large plans to the parties. The parties were then to attempt to agree on one of the submitted plans. If the parties could not agree, the court was empowered either to select the plan it felt provided the most appropriate relief or to order whatever further proceedings it deemed necessary to allow it to fashion appropriate relief.
 
 
 3
 Dr. O'Rourke submitted seven plans to the court and the parties on March 21, 1986. Several of the plans envisioned the creation of four wards, while others contemplated five wards. Defendants advocated one of the four-ward plans, plaintiffs preferred a five-ward plan. After reviewing all of the plans submitted by O'Rourke and briefs submitted by the parties, the court, on June 4, 1986, entered an order adopting plan 5-D, the five-ward plan advocated by plaintiffs, as the one providing the most appropriate relief. On July 9, 1986, the court ordered defendants to submit the plan to the Justice Department for approval, as required by Sec. 5 of the Voting Rights Act.
 
 
 4
 In May 1986, while the parties were considering the plans submitted by O'Rourke, Town Council elections were held under Blackstone's existing electoral system. Seven council members and a mayor were elected to serve two-year terms ending July 1988.
 
 
 5
 While Justice Department approval of plan 5-D was pending, on September 4, 1986, plaintiffs moved the court to order that a special election for members of the Town Council be held in November 1986. The district court granted plaintiffs' motion over defendants' objection, ordering that a new election, using the new electoral scheme, be held 30 to 40 days following final federal approval of the plan and polling sites. The court subsequently amended its order to set the election for March 17, 1987, on motion of Amicus Curiae the State Board of Elections. Defendants' Rule 59 motions asking the court to reconsider its granting of the special election and its refusal to further extend the time for conducting the election were denied. This appeal followed.
 
 II
 
 6
 Defendants' sole assertion on appeal is that the district court was required to hold an evidentiary hearing to determine whether Blackstone's existing at-large system was unlawful before ruling on plaintiffs' motion. Absent a finding of unlawfulness, defendants argue, the district court was required to deny the motion.
 
 
 7
 Plaintiffs assert that although defendants now argue that the district court lacked authority to grant a special election, defendants agreed by the terms of the consent decree to commit the question of a special election to the discretion of the court. We agree.
 
 
 8
 The consent decree expressly recites the parties' agreement that a combined ward/at-large plan for Blackstone 'should be implemented.' The remainder of the decree sets out a process for selecting the exact plan to be implemented, anticipating that the court will select one of the plans submitted by the expert and recommended by the parties, but clearly vesting the ultimate responsibility for 'fashion[ing] appropriate relief' in the court. The decree clearly announces the parties' agreement that plaintiffs should be granted relief.
 
 
 9
 Having agreed that plaintiffs should be granted 'appropriate relief,' defendants now seek to assert that plaintiffs were not entitled to receive that relief immediately. According to defendants, plaintiffs were obliged to tolerate a significant delay in obtaining the agreed upon relief unless they could demonstrate that defendants' past electoral practices were unlawful. Defendants fail to realize that by agreeing that plaintiffs should be granted relief they relieved plaintiffs of the precise burden they now seek to impose.
 
 
 10
 Defendants' argument is based on the assumption that a special election is a unique remedy separate and apart from the choosing of a new electoral plan. The special election, however, is not a distinct remedy. It is merely a vehicle for the immediate implementation of the remedy provided in the court's decree.
 
 
 11
 Once it was determined that plaintiffs were entitled to relief under Sec. 2 of the Voting Rights Act, either by a finding of unlawfulness or by the express consent of the parties, the timing of that relief was a matter within the discretion of the court. It was the court's task to determine whether, under all the circumstances, implementation should be delayed until the next scheduled election or should occur immediately through the ordering of a special election.
 
 
 12
 In this case the district court determined that its order should be made effective on receipt of the required federal approval. In deference to the concerns of those who had to execute the election, the court approved a modest delay. The district court did not abuse its discretion in either of these decisions. We therefore affirm.*
 
 
 13
 AFFIRMED.
 
 
 
 *
 We also note, as a further basis for affirmance, that defendants' challenge to the district court's authority to time implementation of the consent decree necessarily involves, more subtly, a challenge to the consent decree's very finality and integrity. For to open the question of the unlawfulness of defendants' past conduct would necessarily risk inconsistent determinations respecting plaintiffs' entitlement to relief: one, by consent, that they are entitled (though with a formal disclaimer by defendants of any illegal conduct); the other, by adjudication, that they are not. Consent judgments, no less than contested judgments, require the protections of repose to guard, inter alia, against debilitating inconsistencies of result. See Rector v. Suncrest Lumber Co., 52 F.2d 946, 948 (4th Cir. 1931). There are of course formal procedures for opening consent as well as contested judgments to avoid injustice, see, e.g., Fed. R. Civ. P. 60(b), but these procedures are carefully limited in deference to the finality principle, and defendants have not invoked them. To allow defendants to make a belated adversarial challenge to facts underlying plaintiffs' claims by the means here sought would be to undercut the consent decree's finality outside the constraints of these formal procedures